## CASE NO. 11-4126

### IN THE

### UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

_____

JAMES PRICE

       Plaintiff-Appellee

          v.

BOARD OF TRUSTEES OF THE INDIANA
LABORER'S PENSION FUND, *et al.*

       Defendants-Appellants

**On Appeal from the United States District Court
For the Southern District of Ohio, Eastern Division**
_____

### APPELLEE'S PETITION FOR REHEARING *EN BANC*

_____

Tony C. Merry    (0042471)
Law Offices of Tony C. Merry, LLC
7100 North High Street, Suite 302
Worthington, Ohio  43085
(614) 372-7114
(614) 505-6109 [fax]
tmerry@tmerrylaw.com
*Attorney for Plaintiff-Appellee*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES ..........................................................................i

APPELLEE'S PETITION FOR REHEARING *EN BANC* .......................................1

STATEMENT OF ISSUE PRESENTED..................................................1

FACTS RELEVANT TO THE PETITION.............................................2

ARGUMENT ........................................................................................5

I.     The panel's decision conflicts with decisions of the Second, Third, Fourth, Seventh, Eighth and Tenth Circuit Courts of Appeal......................................5

II.    The panel's decision conflicts with this Court's decisions in *Wulf v. Quantum Chemical Corp.*, 26 F.3d 1368, 1377 (6th Cir. 1994), and *Cattin v. General Motors Corp.*, 955 F.2d 416 (6th Cir. 1992). ...................12

III.   The Panel's decision is contrary to the common law. ...................14

CONCLUSION ......................................................................................16

CERTIFICATION OF FRAP 32(a)(7)(B) COMPLIANCE ....................................17

CERTIFICATE OF SERVICE...................................................................17

# TABLE OF AUTHORITIES

## Cases

*Bartlett v. Marietta Operations Support Life Ins.*, 38 F.3d 514 (10th Cir. 1994) .....6

*Blackshear v. Reliance Standard Life Ins. Co.*, 509 F.3d 634 (4th Cir. 2007)...... 8-9

*Cattin v. General Motors Corp.*, 955 F.2d 416 (6th Cir. 1992)............... 1, 12, 13-14

*Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739 (2004)............................5

*Confer v. Custom Engineering Co.*, 952 F.2d 41 (3rd Cir. 1991) ............................9

*Chesser v. Babcock & Wilcox*, 753 F.2d 1570 (11th Cir.), *cert. denied*, 474 U.S. 836 (1985).........................................................................................................14

*Feifer v. Prudential Insurance Co. of America*, 306 F.3d 1202 (2nd Cir. 2002)......................................................................................................7, 8

*Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989) .................10, 11, 13

*Filipowicz v. American Stores Benefit Plans Committee*, 56 F.3d 807 (7th Cir. 1995) .......................................................................................................................6, 9

*Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983).......................................................................................................11

*Gibbs v. CIGNA Corp.*, 440 F.3d 571 (2nd Cir. 2006)..............................................8

*Helfman v. GE Group Life Assur. Co.*, 573 F.3d 383 (6th Cir. 2009).....................11

*Howe v. Varity Corp.*, 896 F.2d 1107 (8th Cir. 1990), *appeal after remand*, 41 F.3d 1263, *aff'd*, 516 U.S. 489 (1996)............................................................6, 7

*International Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Yard-Man*, 716 F.2d 1476 (6th Cir. 1983)......................................................4

*Kovach v. Zurich American Ins. Co.*, 587 F.3d 323 (6th 2009)...............................14

*Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299 (5th Cir. 2007)...........5

*Marrs v. Motorola, Inc.*, 577 F.3d 783 (7th Cir. 2009) .............................................5

*Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) .....................11

*Medina v. Time Ins. Co.*, 3 F. Supp.2d 996 (S. D. Ind. 1998) ................................ 10

*Member Services Life Ins. Co. v. American Nat'l Bank and Trust Co. of Sapulpa*, 130 F.3d 950 (10th Cir. 1997) .............................................................10

*Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir.2005) ...............................................................11

*Price v. Board of Trustees of the Indiana Laborer's Pension Fund*, 632 F.3d 288 (6th Cir. 2011)..........................................................................4

*Shaw v. Delta Airlines, Inc.*, 463 U.S. 85 (1983) ....................................................10

*Taylor v. KeyCorp*, 680 F.3d 609 (6th Cir. 2012)....................................................14

*Wal-Mart Stores v. Wells*, 213 F.3d 398 (7th Cir. 2000)........................................10

*Wheeler v. Dynamic Engineering, Inc.*, 62 F.3d 634 (4th Cir. 1995)......................10

*Wilkins v. Baptist Healthcare System*, 150 F.3d 609 (6th Cir. 1998)........................4

*Wulf v. Quantum Chemical Corp.*, 26 F.3d 1368 (6th Cir. 1994) ............. 1, 2, 12-13

## Other Authorities

29 U.S.C. §1054(g)(2)................................................................................13

RESTATEMENT (SECOND) OF THE LAW OF CONTRACTS (1979) §311 ........................15

13 R. Lord, WILLISTON ON CONTRACTS (4th Ed. 2000) §37:57 .............................15

S. Sacher & J. Singer, EMPLOYEE BENEFITS LAW (ABA Section of Labor and Employment Law, 2000) ...................................................................... 5-7

**APPELLEE'S PETITION FOR REHEARING *EN BANC***

A divided panel of this Court has determined that ERISA permits the termination by amendment of a plan participant's disability benefits even after the participant becomes disabled, has satisfied all conditions precedent to coverage, and has been receiving disability benefits for many years.

The Appellee, James Price, petitions for rehearing *en banc* because this case involves a question of exceptional importance, namely, whether a participant in an ERISA welfare benefit plan can be divested of a benefit after having become eligible for and having begun receiving that benefit.  The panel decision on this point conflicts with the authoritative decisions of the United States Courts of Appeals for the Second, Third, Fourth, Seventh, Eighth, and Tenth Circuits on this important issue.

 Appellee Price further petitions for rehearing *en banc* because the panel decision conflicts with this Court's decisions in *Wulf v. Quantum Chemical Corp*., 26 F.3d 1368, 1377 (6th Cir. 1994), and *Cattin v. General Motors Corp*., 955 F.2d 416 (6th Cir. 1992).  Consideration by the full Court, therefore, is also necessary to secure and maintain the uniformity of this Court's decisions.

**STATEMENT OF ISSUE PRESENTED**

It has long been established that "[b]enefits under a welfare plan do not vest as a matter of law under ERISA" and, therefore, "[a]n employer may amend or

1

terminate an employee welfare benefit plan at any time." *Wulf v. Quantum Chemical Corp*., 26 F.3d 1368, 1377 (6th Cir. 1994).

The question presented in this case, however, is whether the employer remains free to terminate a welfare benefit – in this case a disability benefit – after a participant has become disabled and has begun to receive benefits. As discussed in more detail below, prior decisions of this Court and decisions from six sister Circuit Courts of Appeal say that the answer is "no." Because the panel held to the contrary, this Court should grant rehearing and consider the matter *en banc*.

## FACTS RELEVANT TO THE PETITION

James Price was a participant in the Indiana State District Council of Laborers and Hod Carriers Pension Fund, now known as the Indiana Laborer's Pension Fund. In January 1990 Price was injured and, as a result of those injuries, became disabled from working. Price applied for and was awarded a disability benefit available under the Plan to any participant determined by the Plan's Trustees to be "totally and permanently disabled" from working in any occupation.

In 2001, the Trustees determined that Price was no longer "totally disabled," but the Trustees informed Price that he was eligible for an "Occupational Disability Benefit," as follows:

> The Occupational Disability Benefit shall be payable only during continued Occupational Disability and until Early Retirement Age under section 2.1(n). Once a Participant reaches Early Retirement Age under section 2.1(n), his Occupational Disability Benefit

2

> payments shall cease and he shall begin receiving his Early
> Retirement Benefit upon approval of his application for benefits
> without any adjustment for Occupational Disability Benefit payments
> received.

Plan, §7A.5 (emphasis added).

Accordingly, Price did not challenge the Trustees' determination that he was not "totally and permanently disabled." Rather, Price applied for and began receiving a monthly pension benefit under the "Occupational Disability" provision in 2001.

Price's Occupational Disability Benefit was re-approved in 2002, 2003, 2004 and 2005. The Trustees further advised Price that he would not need to submit to another annual review.

On January 11, 2006, the Trustees informed Price that, effective January 1, 2006, the Plan had been amended to limit the duration of Occupational Disability Benefits to two years and further advised him that his Occupational Disability Benefit would terminate effective January 1, 2007, notwithstanding that Price had not yet attained early retirement age.

Price appealed the termination of his Occupational Disability Benefit arguing, *inter alia*, that Price's benefit could not be eliminated once it had "'ripened' into pay status." In a brief statement that simply cited the plan amendment, the Trustees rejected the appeal.

3

Price filed suit in the United States District Court for the Southern District of Ohio. Relying principally upon *International Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Yard-Man*, 716 F.2d 1476 (6th Cir. 1983), and its progeny, the district court granted judgment for Price, holding that once Price actually became disabled, his "status" as a disabled individual raised a presumption under *Yard-Man* that Price's benefits vested.

The Trustees timely appealed, and a panel of this Court, in a divided opinion, reversed. *Price v. Board of Trustees of the Indiana Laborer's Pension Fund*, 632 F.3d 288 (6th Cir. 2011). Judge McKeague, joined by Judge Sutton, concluded that the district court should not have applied a *Yard-Man* analysis under the facts of this case and remanded with instructions to review the claim as a claim for benefits in accordance with the standards set out in *Wilkins v. Baptist Healthcare System*, 150 F.3d 609 (6th Cir. 1998). District Judge Jonker, sitting by designation, concurred to the extent that he found *Yard-Man* inapplicable but would have affirmed the District Court's decision on an alternative basis.

On remand, the district court applied the standards set out in *Wilkins* and again entered judgment for Price. The essence of the district court's decision was that, as a matter of ERISA's common law, Price's disability benefits vested once he became disabled.

4

The Trustees once again appealed.  The same panel, again by a divided vote and with Judge Jonker dissenting, reversed and entered an order directing the district court to enter judgment for the Trustees.  For the reasons that follow, Price now petitions for rehearing *en banc*.

## ARGUMENT

## I.    The panel's decision conflicts with decisions of the Second, Third, Fourth, Seventh, Eighth and Tenth Circuit Courts of Appeal.

A respected[1] ERISA treatise recognizes that the Courts of Appeal have heretofore uniformly held that a plan sponsor's right to amend its benefit plan does not extend to the right to divest a participant of a benefit after the participant has satisfied all conditions precedent to the receipt of that benefit:

> [A] well-established exception to the sponsor's right to amend applies where the participant's right to a welfare benefit "accrued" before amendment.  In general, once a participant has satisfied the plan conditions for a welfare benefit, that benefit is said to have accrued (or "vested" or "ripened") and cannot be taken away by plan amendment or termination.  Courts have applied this rule to protect group life insurance, disability, vacation, and other benefits.
>
> Likewise, courts have ruled that a medical plan may not retroactively apply an exclusion to a claim that would have been covered before the exclusion was adopted.

---

[1] *See, e.g.*, *Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 746 (2004) (citing Sacher treatise); *Marrs v. Motorola, Inc.*, 577 F.3d 783, 784 -785 (7th Cir. 2009) (same); *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 322 n. 4 (5th Cir. 2007) (same).

S. Sacher & J. Singer, EMPLOYEE BENEFITS LAW (ABA Section of Labor and Employment Law, 2000) at pp. 1052-53 (footnotes omitted) (hereafter, "Sacher").

In a footnote, Sacher observes, "The Seventh and Tenth Circuits have ruled that group life insurance benefits 'vest' when a participant dies and thereafter cannot be taken away through plan amendment or termination."  Sacher, at p. 1052 n. 196, citing *Filopowicz v. American Stores Benefit Plans Committee*, 56 F.3d 807, 815 (7th Cir. 1995); *Bartlett v. Marietta Operations Support Life Ins*., 38 F.3d 514, 517 (10th Cir. 1994).

With respect to disability benefits, *see* Sacher at p. 1052, n. 197, the Eighth Circuit has expressly held that disability benefits "ripen" at the time of disability and cannot thereafter be discharged by an amendment that transfers obligations to another employer.  *Howe v. Varity Corp*., 896 F.2d 1107, 1110-11 (8th Cir. 1990), *appeal after remand*, 41 F.3d 1263 (8th Cir. 1994), *aff'd,* 516 U.S. 489 (1996).

*Howe* was a class action in which retirees challenged a decision of their former employer to transfer the obligations to pay their benefits to another employer.  The court of appeals reversed the district court's conclusion that the retirees, as a class, stated a claim, relying on the familiar rubric that welfare benefits, as a rule, do not vest.

Regarding a specific subclass of retirees, however, those who had become disabled before the plan amendments, the court of appeals held that their disability benefits *had vested* and that their claims could proceed:

> The first subclass consists of persons who became injured or disabled (and thereby vested) prior to May 9, 1986, the date they were transferred to MCC. We disagree with defendants' argument that these beneficiaries must look solely to MCC for recovery. M-F Inc.'s contractual obligations to provide health and disability benefits to this group had fully ripened prior to the 1986 transfer and could not be discharged by a transfer of the obligations to MCC. It is fundamental that an assignment will not discharge the assignor's debt to a third party without the third party's consent. E.g., 4 A. Corbin, Corbin on Contracts § 866 (1951). The record is not clear, but assuming there are members of the conditional class who became entitled to welfare benefits by reason of injury or disability before May 9, 1986, then the preliminary injunction shall continue as to these persons.

*Howe*, 896 F.2d at 1110 -1111.

As Sacher suggests, other courts of appeals opinions are in accord. The plaintiffs in *Feifer v. Prudential Insurance Co. of America*, 306 F.3d 1202 (2nd Cir. 2002), were individuals who had become disabled and were receiving benefits under a welfare benefit plan insured by Prudential. At the time the plaintiffs became disabled, the benefits booklet given to them provided that "'[s]hort-term disability benefits will be offset by any payments for which you are eligible under the State Disability Benefits Law or the Worker's Compensation Law.' The three-paragraph section entitled 'LONG TERM DISABILITY,' which immediately followed, contained no analogous provision." 306 F.3d at 1205. After the plaintiffs had

been disabled for more than a year, Prudential advised each of them that their disability benefits were subject to offset. Prudential based its assertion on its claim that its group disability insurance contract had always contained an offset provision. The actual contract, however, had not been delivered to the employer until long after the plaintiffs had become disabled and were receiving disability benefits. *Id*. at 1205-06.

The plaintiffs argued that, as to them, Prudential could not change the terms of its disability policy after they had become eligible for benefits. The Second Circuit agreed, noting "the peculiar circumstances regarding disability benefits" and holding "as a matter of law that, absent explicit language to the contrary, a plan document providing for disability benefits promises that these benefits vest with respect to an employee no later than the time that the employee becomes disabled." *Id*. at 1212. *See also Gibbs v. CIGNA Corp*., 440 F.3d 571 (2nd Cir. 2006) (noting that "[d]isability plans are treated somewhat differently than other welfare plans for purposes of vesting" and holding that a later plan document that provided the administrator with discretion to determine benefits did not apply to a participant who was disabled prior to the amendment).

In *Blackshear v. Reliance Standard Life Ins. Co*., 509 F.3d 634 (4th Cir. 2007), a group life insurance contract provided that life insurance benefits became effective on the first day of employment. 509 F.3d at 637. After Blackshear died,

8

the contract was amended to provide that employees would become eligible for life

insurance benefits beginning on the first month after the employee had completed

six months of employment, thus eliminating Blackshear's coverage. *Id*.

Recognizing that welfare benefit plans are exempt from ERISA's statutory

vesting requirements and that an employer in the usual case may unilaterally alter

the terms, the court nevertheless determined that Blackshear's right to life

insurance proceeds vested when she died. Relying on the Seventh Circuit's

decision in *Filipowicz*, the court held

> that the employer could not "retroactively modify a life insurance
> policy after the insured's death so as to take away the life insurance
> proceeds due a beneficiary at the date of the insured's death. … A
> later modification, even one which is retroactive, can have no effect
> on a beneficiary's claim to benefits."

*Blackshear*, 509 F.3d at 641, quoting *Filipowicz* at 815.

In *Confer v. Custom Engineering Co*., 952 F.2d 41 (3rd Cir. 1991), an

employer announced to its employees that its new health plan would not cover

medical costs arising from motorcycle accidents. The actual policy that was

issued, however, did not contain the exclusion. The plaintiff was injured in a

motorcycle accident two months later, after which the employer amended its policy

to exclude coverage for motorcycle injuries. In a per curiam opinion, the court

held that the motorcycle exclusion "could only operate prospectively." 952 F.2d at

44.

9

Several other opinions in other circuits similarly conclude that a plan sponsor's right to amend a welfare benefit plan is limited with respect to a plan participant who has already qualified for the promised benefit. *See, e.g., Wal-Mart Stores v. Wells*, 213 F.3d 398 (7th Cir. 2000) (rejecting plan amendment altering terms of medical plan's subrogation provisions after the participant had received a settlement in a personal injury action); *Member Services Life Ins. Co. v. American Nat'l Bank and Trust Co. of Sapulpa*, 130 F.3d 950 (10th Cir. 1997) (amendment to allow plan to recoup benefits paid to participant by third-party tortfeasor enacted after the participant obtained the tort judgment violated ERISA); *Wheeler v. Dynamic Engineering, Inc*., 62 F.3d 634 (4th Cir. 1995) (amendment to delete coverage for a particular type of treatment after a participant had begun that treatment violated ERISA); *Medina v. Time Ins. Co*., 3 F. Supp.2d 996, 1000 (S. D. Ind. 1998) (refusing to apply plan amendment changing the effective date of coverage to a participant who had already incurred medical expenses).

Among the many goals that Congress sought to achieve when it enacted ERISA, two are pertinent here. First, Congress sought "to promote the interests of employees and their beneficiaries in employee benefit plans," and "to protect contractually defined benefits." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 113-114 (1989), quoting *Shaw v. Delta Airlines, Inc*., 463 U.S. 85, 90 (1983),

and *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985). The panel decision in this case is inimical to those goals.

Second, by federalizing the law of employee benefits, Congress sought to bring national uniformity to the administration of benefit plans. *Helfman v. GE Group Life Assur. Co*., 573 F.3d 383, 390 (6th Cir. 2009) , quoting *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp*., 399 F.3d 692, 698 (6th Cir. 2005) ("The purpose of ERISA preemption was to avoid conflicting federal and state regulation and to create a nationally uniform administration of employee benefit plans.").

To achieve this uniformity, Congress understood when it passed ERISA that "a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans." *Bruch*, 489 U.S. at 110, quoting *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 24, n. 26 (1983). *See also Cattin*, 955 F.2d 416, 425 n. 6 ("If a retirement plan creates rights in excess of those established by ERISA, however, those rights may be enforceable in contract under federal common law.").

This case merits the Court's *en banc* consideration because the panel opinion disrupts what has been to this point a consensus in the circuits concerning the right

of employers to amend an ERISA benefit plan after a participant has qualified for the benefit.

## II. The panel's decision conflicts with this Court's decisions in *Wulf v. Quantum Chemical Corp*., 26 F.3d 1368 (6th Cir. 1994), and *Cattin v. General Motors Corp*., 955 F.2d 416 (6th Cir. 1992).

*En banc* review is merited in this case, as well, because the panel's opinion is at odds with this Court's prior decisions in *Wulf* and *Cattin*.

*Wulf* involved employees of a company who claimed an entitlement to a greater amount of severance benefits than they received after the division in which they worked was sold to another employer. At issue was the validity of a plan amendment that had the effect of reducing the amount of a benefit that would become payable. While holding that the amendment was expressly prohibited by a plan provision, the court added:

> Even if [the plan] did not contain the prohibition against an amendment decreasing account balances, Quantum's act of amending the Plan after the sale and after the plaintiffs had filed their applications for distribution would raise a serious question. As then Chief Judge Hillman stated in *Edward W. Sparrow Hospital Ass'n, Inc. v. Industrial Welding, Inc*., 1990 U.S. Dist. Lexis 9194 (W.D. Mich., July 19, 1990), "Once a participant became entitled to coverage under the then existing terms of the Plan, it would be entirely illusory to allow [the employer] to essentially divest them of that right by retroactively deleting the benefit."

26 F.3d at 1378.

The Court continued, "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans ... and to protect

12

contractually defined benefits.  The distribution rights under the Plan are

'contractually defined benefits.'  We conclude that the amendment cannot have the

effect of diminishing the value of accounts of those members of the plaintiff class

that have vested." *Wulf,* 26 F.3d at 1377 -1378 (citing and quoting *Bruch*, 489

U.S. at 113 (1989)(internal citations and quotations omitted).

In *Cattin*, the plaintiffs (none of whom had yet worked for General Motors

for thirty years) objected to General Motors' elimination of a "thirty-and-out"

retirement benefit that provided, among other things, a Social Security benefit

enhancement once a plaintiff retired with 30 years of service.  The bulk of the

Court's opinion addressed – and rejected – the plaintiffs' claims that their

entitlement to the early retirement benefit was governed by ERISA's anti-cutback

rule, 29 U.S.C. §1054(g)(2).

The plaintiffs also argued, however, that their right to a "thirty-and-out"

pension vested as a matter of common law, despite GM's reservation of a right, in

its plan, to amend or terminate the plan.  In rejecting that argument, this Court

cited with approval the district court's holding that the plaintiffs had no claim to

benefits because they had not attained thirty years of service at the time GM

eliminated the benefit:

> [P]laintiffs' contractual rights to participate in the thirty-and-out
> program with its social security supplements would arise only if and
> when plaintiffs complied with the terms of the plan as they existed
> before the plan was amended.  Under the plan, plaintiffs had to

13

> complete thirty years of credited service with GM before they were
> entitled to participate in the thirty-and-out program or to receive the
> social security supplements.  Because they did not complete thirty
> years of service, the district court held that plaintiffs were not entitled
> to the thirty-and-out program and the social security supplements.

*Cattin*, 955 F.2d at 425 (6th Cir. 1992).  *See also*, *ibid*., at 426, citing *Chesser v.*

*Babcock & Wilcox*, 753 F.2d 1570 (11th Cir.), *cert. denied*, 474 U.S. 836 (1985)

(In *Chesser* employees were laid off after twenty-five years of service with their

employer.  Had they been able to obtain thirty years of service, they would have

been entitled to early retirement benefits.").

 The corollary to *Cattin* is that, if the plaintiffs had worked for GM for 30

years, their contractual right to the "thirty-and-out" benefit, with its attendant

Social Security supplement, would have become non-forfeitable.  That corollary

simply cannot be reconciled with the panel opinion in this case.

 The Court should grant *en banc* review to address the differences between

the Court's prior decisions and the panel's decision in this case.

## III. The panel's decision is contrary to the common law.

 In developing a uniform body of federal law to govern ERISA cases, this

Court has often looked for guidance to the common law.  *Taylor v. KeyCorp*, 680

F.3d 609, 615 (6th Cir. 2012) (citing the Restatement (Second of Trusts); *Kovach v.*

*Zurich American Ins. Co*., 587 F.3d 323, 336 (6th 2009) (citing Restatement

(Second) of Contracts).  That Price's benefits vested when he began receiving them

14

is clearly established by the doctrine of third-party beneficiaries embedded in the common law of contracts.

The discussion in the Second Restatement begins with the commonly-understood proposition that, in the absence of a provision in the contract to the contrary, "the promisor and the promisee retain power to modify or discharge or modify the duty [owed to an intended third-party beneficiary] by subsequent agreement." RESTATEMENT (SECOND) OF THE LAW OF CONTRACTS §311(2), at p. 463.

However, the Restatement then observes that power of the promisor and promisee to modify the duty by subsequent agreement "terminates when the beneficiary, before he receives notification of the discharge or modification, materially changes his position in justifiable reliance on the promise or brings suit on it or manifests assent to it at the request of the promisor or promisee." *Id*. §311(3), at p. 463. *See also* 13 R. Lord, WILLISTON ON CONTRACTS (4th Ed. 2000), §37:57 at p. 332 ("[B]y introducing a third party into the relationship, the contracting parties theoretically should be deemed to have irrevocably waived their inherent bipartite power to alter or terminate the contract. ").

For the sake of consistency and uniformity in the federal common law, the Court should reconsider Price's claim *en banc*.

15

## CONCLUSION

Plaintiff-Appellee James Price respectfully requests this Court vacate the panel opinion and grant Price's petition for rehearing *en banc*.

Respectfully submitted,

____/s/ Tony C. Merry_____
Tony C. Merry  (0042471)
Law Offices of Tony C. Merry LLC
7100 North High Street, Suite 302
Worthington, Ohio  43085
(614) 372-7114
(614) 505-6109 [fax]
tmerry@tmerrylaw.com

Attorney for Appellee James R. Price

16

## CERTIFICATE OF FRAP 32(a)(7)(B) COMPLIANCE

I certify that this brief satisfies the requirements of Fed. R. App. P.

32(a)(7)(B).  The actual word count is 4293.

_____/s/ Tony C. Merry_____
Tony C. Merry

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically with the Court

and that electronic service thereby was made upon all counsel of record this 28th

day of February, 2013.

_____/s/ Tony C. Merry_____
Tony C. Merry